UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GEORGE & COMPANY, LLC,

                   Plaintiff,                            <u>MEMORANDUM AND ORDER</u>

     -against-                         19-CV-04391 (RPK) (SJB)

SPIN MASTER CORP., SPIN MASTER U.S.
HOLDINGS, INC., SPIN MASTER LTD., SPIN
MASTER, INC., CARDINAL INDUSTRIES,
INC., WALMART, INC., a foreign profit
corporation, and JOEL BERGER, an individual,


                   Defendants.
-----------------------------------------------------------------X
RACHEL P. KOVNER, United States District Judge.

      Plaintiff George & Company, LLC, owner and distributor of a dice game called "LCR,"

filed this action alleging breach of contract, declaratory judgment, breach of fiduciary duty,

fraudulent inducement, and trademark infringement in connection with the sale and distribution of

a competitor game, "PassPlay: The Game of LeftCenterRight."   Plaintiff names as defendants

Cardinal Industries, Inc., which distributes the competing product; Spin Master Corp., a parent of

Cardinal, along with related subsidiaries Spin Master U.S. Holdings, Inc., Spin Master Ltd., and

Spin Master, Inc.; Walmart, Inc., which sells the competing product; and Joel Berger, a former

principal shareholder of Cardinal.

      Defendants have moved to dismiss the complaint for failure to state a claim.  Defendants

Spin Master Corp. and Spin Master Ltd., both of which are organized under the laws of Canada,

have also moved to dismiss for lack of personal jurisdiction.  For the reasons below, plaintiff's

claims for breach of contract based on a distribution agreement, declaratory judgment, trademark

infringement related to the mark LEFT CENTER RIGHT and a "Tagline and Arrows" design, and

fraudulent inducement are dismissed for failure to state a claim.  The Canadian Spin Master defendants are also dismissed for lack of personal jurisdiction.  I deny defendants' motion to dismiss plaintiff's remaining claims, which allege breach of contract based on a license agreement, breach of fiduciary duty, and trademark infringement of the LCR family of marks.

## BACKGROUND

The following facts are drawn from the complaint and are assumed true for the purposes of this order.  Plaintiff George & Company, LLC is the owner and distributor of a dice game known as "LCR" or "LCR LEFT! CENTER! RIGHT!"  Fourth Am. Compl. ¶ 1 at 1; *id.* at 25-30 ("Compl.") (Dkt. #1).  Plaintiff owns the common law trademarks "LEFT CENTER RIGHT" for dice games, party games, and board games featuring specially marked dice and chips, as well as 17 similar federally registered marks.  *See id.* ¶ 33 at 10-12.

In 2009, plaintiff entered into a written license agreement with defendant Cardinal Industries, Inc., under which Cardinal became the exclusive licensee of plaintiff's marks.  *See id.* ¶¶ 41-43 at 13-14.  The agreement prohibited Cardinal from derogating or denigrating plaintiff's intellectual property rights during or after the term of the agreement.  *See id.* ¶¶ 45, 57 at 16, 19-20.  It also required Cardinal to return unsold inventory and molds upon the agreement's termination.  *See id.* ¶ 159 at 76.  Plaintiff and Cardinal also entered into an agreement for Cardinal to distribute plaintiff's game.  *See id.* ¶ 48 at 17.

In 2015, some or all of defendants Spin Master Corp., Spin Master Holdings, Spin Master Ltd., and Spin Master Inc. acquired Cardinal in a merger.  *See id.* ¶ 49 at 17.  After the merger, Cardinal and Spin Master began selling a competing game called "PassPlay: The Game of LeftCenterRight," which plaintiff alleges infringed on plaintiff's trademarks.  *See id.* ¶ 53 at 18.  Plaintiff alleges that Cardinal persuaded retailers, including Walmart, Inc., to sell PassPlay as

though it were plaintiff's game.  *See id.* ¶¶ 57(34)-(36) at 39.  Plaintiff alleges that defendants' distribution of PassPlay has generated confusion among consumers, vendors, suppliers, and retailers, which has in turn caused plaintiff monetary and reputational injuries.  *See id.* ¶¶ 132-143 at 68-72.

In 2018, plaintiff filed this suit in the United States District Court for the Middle District of Florida.  *See George & Co. LLC v. Spin Master Corp.*, No. 18-CV-154, 2018 WL 5268754, at *1 (M.D. Fla. Sep. 13, 2018).  Plaintiff named as defendants Cardinal, the Spin Master defendants, Joel Berger, and an additional individual.  *See id.* at *1-2.  As relevant here, Judge Sheri Polster Chappell dismissed all defendants except Cardinal for lack of personal jurisdiction, but denied a motion to dismiss plaintiff's claims for breach of contract and breach of fiduciary duty.  *See id.* at *13; *see also George & Co. LLC v. Spin Master Corp.*, No. 18-CV-154, 2018 WL 6817022, at *6-7 (M.D. Fla. Dec. 27, 2018).

In 2019, while plaintiff's initial lawsuit was still pending in Florida, plaintiff filed this suit against Cardinal, the Spin Master defendants, Joel Berger, and Walmart in this district.  *See generally* Compl., No. 19-CV-4391.  In August 2019, the parties stipulated to the transfer of the Florida case to this district.  *See* Aug. 23, 2019 Order, No. 19-CV-4883.  The parties also agreed that the Florida case should be consolidated with this lawsuit.  *See* Nov. 5, 2019 Order, Nos. 19-CV-4883, 19-CV-4391; *see also* Mar. 20, 2020 Order, No. 19-CV-4391 ("Any pre-trial filing related to 19-CV-4391 or 19-CV-4883 by any party shall be made only in the lead case, i.e. 19-CV-4391, from now on.").

The operative Fourth Amended Complaint in this lawsuit asserts 12 claims: breach of contract (Count I); declaratory relief (Count II); breach of fiduciary duty (Count III); fraud in the inducement (Count XII); and several trademark-related claims under federal and New York law:

trademark infringement, false designation of origin, unfair competition, and conspiracy to infringe and unfairly compete (Counts IV-XI).  Defendants seek to dismiss all claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Defs.' Mem. in Supp. of Mot. to Dismiss at 8-22 ("Defs.' Mem.") (Dkt. #28).  Defendants Spin Master Corp. and Spin Master Ltd. also argue that they should be dismissed from the lawsuit under Rule 12(b)(2) based on lack of personal jurisdiction.  *Id.* at 22-30.

## DISCUSSION

### I.   Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) directs a court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  To avoid dismissal on this basis, a complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The facial "plausibility standard is not akin to a 'probability requirement,'" but it requires a plaintiff to allege sufficient facts to enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ibid.* (quoting *Twombly*, 550 U.S. at 556).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (quotations omitted).  In evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept all facts alleged in the complaint as true.  *Iqbal*, 556 U.S. at 678.  The Court, however, is not obligated to adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements."  *Ibid.*

### A.  Breach of Contract (Count I)

Defendants move to dismiss plaintiff's claim for breach of contract.  Plaintiff's complaint alleges that Cardinal breached contracts with plaintiffs in three ways: by breaching a non-

denigration clause in the parties' license agreement, by failing to return unsold inventory and molds as required by that agreement, and by breaching a separate distribution agreement. *See* Compl. ¶¶ 45-48, 159 at 16-17, 76.  In considering these claims, the Court may consider the agreements referenced in the complaint, including the license agreement. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (explaining that "[a] complaint is deemed to include any written instrument attached to it as an exhibit," "incorporated in it by reference" or on whose "terms and effect" the complaint "relies heavily" (quotations omitted)).

### i.     Non-Denigration Clause

Plaintiff first alleges that Cardinal breached the parties' 2009 license agreement. According to plaintiff, the agreement "prohibited Cardinal from taking any action in denigration" of plaintiff's intellectual property rights in its game and "obligated Cardinal to preserve the confidential information so imparted to it."  Compl. ¶¶ 147-150 at 73.  Plaintiff alleges that the parties "have continued under the License Agreement through the recent present," but that regardless of how long that agreement remained in effect, Cardinal's obligations under the agreement "survive termination." *Id.* ¶¶ 151, 153 at 73-74.  Plaintiff alleges that Cardinal breached the agreement by, among other things, selling a "knock-off" version of plaintiff's product (PassPlay); confusing retailers, customers, vendors, and suppliers as to the source or origin of PassPlay; and using plaintiff's confidential and proprietary information in ways proscribed by the agreement. *See id.* ¶ 158 at 75-76.

These allegations, which the parties agree are governed by Florida law, are essentially identical to those in plaintiff's First Amended Complaint. *See* Pl.'s First Am. Compl. ¶¶ 73-90 at 35-40 (No. 19-CV-4883, Dkt. #24).  In 2018, before this lawsuit was transferred to this district, Judge Chappell denied a motion to dismiss plaintiff's breach-of-contract claim, concluding that

plaintiff had adequately alleged that Cardinal breached the non-denigration clause.  *See George & Co. LLC v. Spin Master Corp.*, No. 18-CV-154, 2018 WL 5268754, at *3 (M.D. Fla. Sept. 13, 2018).

Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  "[T]he doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions."  *Id.* at 816.  Nevertheless, district courts may depart from earlier decisions for "cogent or compelling reasons including an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (quotations omitted).

No circumstance justifies departure from Judge Chappell's decision here.  The elements of a breach-of-contract claim under Florida law are "(1) a valid contract; (2) a material breach; and (3) damages."  *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1366 (S.D. Fla. 2017) (quotations omitted).  As Judge Chappell recognized, plaintiff has adequately alleged these elements.  Plaintiff pointed to a valid contract (the license agreement), which required Cardinal to "do nothing in derogation or dilution" of plaintiff's trademarks "during the term of this Agreement or at any time thereafter."  License Agreement at 4 (Dkt. #29-14); *see id.* at 1.  Plaintiff has further alleged a material breach—primarily that Cardinal sold an infringing product to retailers in the guise of plaintiff's product—as well as damages from that breach.  *See* Compl. ¶¶ 147-167 at 73-77.  Accordingly, defendants' motion to dismiss this part of plaintiff's breach-of-contract claim is denied.

### ii.      Unsold Inventory and Molds

Plaintiff's next breach-of-contract allegation is that Cardinal breached the license agreement by failing "to return or destroy all unsold inventory" and manufacturing molds upon the agreement's termination. Compl. ¶¶ 159-160 at 76; *see* License Agreement at 7. Defendants argue that this claim is time-barred under Florida's five-year statute of limitations for breach-of-contract claims. Defs' Mem. at 9-10. In particular, defendants contend that because the parties' written agreement stated that the agreement expired on December 31, 2011, *see* License Agreement at 1, any breach of Cardinal's obligations to return or destroy inventory occurred on December 31, 2011, or soon thereafter, *see* Defs' Mem. at 9. As a result, defendants argue, plaintiff's suit more than five years later is untimely. *Id.* at 9-10. Plaintiff responds that the statute of limitations has not run because the parties' agreement actually remained in effect beyond December 31, 2011, based on a "tacit agreement to continue the license relationship under the License Agreement . . . until sometime after March 2018." Compl. ¶¶ 171-172 at 78; *see id.* ¶ 151 at 73. As evidence of such an implied continuation of the agreement, plaintiff points to the parties' conduct after 2011, including Cardinal's advertisement of plaintiff's game and Cardinal's failure to return any unsold inventory. *See id.* ¶ 172 at 78.

Plaintiff has adequately alleged a breach of an implied-in-fact contract that occurred within the statute of limitations. In Florida, "where an agreement expires by its terms and without more, the parties continue to perform as before, an implication arises that they have mutually assented to a new contract containing the same provisions as the old." *Rubenstein v. Primedica Healthcare, Inc.*, 755 So. 2d 746, 749 (Fla. Dist. Ct. App. 2000); *see Carnival Corp. v. U.S. Bank Nat. Ass'n. ND*, No. 08-22401-CIV, 2009 WL 3584935, at *3 (S.D. Fla. Oct. 27, 2009). Such a contract is called an implied-in-fact contract, and "Florida courts use breach of contract analysis to evaluate

claims of breach of contract implied in fact." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012).

Plaintiff has adequately pleaded a breach of an implied-in-fact contract under these principles.  In particular, plaintiff has adequately alleged that the parties' course of conduct implied that they mutually assented to continuing the license agreement after its formal expiration.  And plaintiff has adequately alleged that defendant then breached that implied-in-fact contract by failing to return or destroy inventory and molds once the implied-in-fact contract concluded.  Finally, plaintiff has alleged damages from the breach.  Compl. ¶¶ 163-167 at 77.  These allegations suffice for the motion-to-dismiss stage.

### iii.    Distribution Agreement

Finally, plaintiff alleges that Cardinal breached "a separate agreement" regarding distribution when it stopped selling plaintiff's game in favor of PassPlay.  Compl. ¶ 48 at 17.  Plaintiff alleges that under plaintiff's distribution agreement with Cardinal, "Cardinal agreed to distribute" plaintiff's game in exchange for "the exclusive right to represent Plaintiff's brand and to resell Plaintiff's trademarked products to Walmart and other selected national retailers."  *Ibid.*

The complaint does not state whether plaintiff brings this claim under Florida or New York law, but the elements are the same in both jurisdictions: plaintiff must allege a valid contract, material breach, and damages.  *See Brush*, 238 F. Supp. 3d at 1366; *U.S. Bank Nat. Ass'n v. Dexia Real Estate Capital Markets*, 959 F. Supp. 2d 443, 447 (S.D.N.Y. 2013).  In either jurisdiction, a plaintiff must do more than "[s]tat[e] in a conclusory manner than an agreement was breached." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008).  Instead, to adequately plead that a valid contract existed, a plaintiff must at least allege "(1) [an] offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Vega v. T-Mobile USA, Inc.*,

564 F.3d 1256, 1272 (11th Cir. 2009); *Artists Rights Enf't Corp. v. Estate of King*, 370 F. Supp. 3d 371, 380 (S.D.N.Y. 2019).

Under this standard, courts have dismissed breach-of-contract claims when the plaintiff fails to "set forth a single fact relating to the formation of the contract, the date it took place, the contract's major terms, the parties to the contract, or [the defendant's] assent to its terms." *Berman*, 580 F. Supp. 2d at 202; *Debose v. Univ. of S. Fla.*, 178 F. Supp. 3d 1258, 1269 (M.D. Fla. 2016) (dismissing breach-of-contract claim because plaintiff failed to attach or incorporate contract into complaint and allegations did not specify provision breached or nature of breach); *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) (dismissing breach-of-contract claim because plaintiffs failed to identify language imposing obligation on defendants).

Here, plaintiff has not adequately pleaded the existence of a valid contract. The complaint does not specify when the purported distribution agreement was made, its duration, its terms, or which parties, if any, were bound to it other than Cardinal and plaintiff. *See* Compl. ¶ 48 at 17. Plaintiff has not provided a copy of the agreement, quoted a specific provision or promise that would give defendants notice of the contractual obligation breached, or even stated whether the agreement was made orally or in writing. *See Berman*, 580 F. Supp. 2d at 202 (dismissing breach-of-contract claim because plaintiff did not provide any details about the formation of the contract, and "[m]ost strikingly . . . fail[ed] to allege that the contract at issue was oral"). Plaintiff's claim based on an unspecified distribution agreement is therefore dismissed for failure to state a claim.

### B.  Declaratory Judgment (Count II)

Defendants next move to dismiss plaintiff's claim seeking a declaratory judgment. *See* Compl. ¶¶ 168-176 at 77-79. In that claim, plaintiff asks the court to determine "whether the License Agreement remained in effect by tacit agreement of the parties past the expiration date,"

"when Cardinal's license rights under the License Agreement terminated," *id.* ¶¶ 171-173 at 78, and whether Cardinal "should be mandatorily enjoined" to return unsold inventory and molds used in the manufacture of plaintiff's game, *see id.* ¶¶ 174-176 at 78-79.

A claim seeking a declaratory judgment must be dismissed where it seeks "resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action." *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006). Whether and when the parties' contractual obligations terminated—and thus whether Cardinal breached the provision by failing to return materials to plaintiff—is a question necessary to deciding the breach-of-contract claim. Plaintiff's declaratory judgment claim incorporates the same facts as its breach-of-contract claim and seeks similar relief—a determination of whether Cardinal is obligated to return the materials. *See EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 99 (S.D.N.Y. 2018) (dismissing a declaratory judgment claim because determination of plaintiffs' contract claims would provide the relief sought); *Campione v. Campione*, 942 F. Supp. 2d 279, 285 (E.D.N.Y. 2013) (dismissing a claim for declaratory judgment because "it parallels the other claims and merely seeks a declaration of the same rights and obligations" (quotations omitted)).

Plaintiff argues that the declaratory injunction claim is not duplicative because it is only as part of this claim that plaintiff seeks an injunction requiring Cardinal to return unsold inventory or molds. But plaintiff could seek that remedy for breach of contract. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004). And "[w]hen the traditional remedy provides the parties with the procedural safeguards required by the law to insure the availability of a proper remedy," the Court "may properly dismiss the declaratory judgment action." *John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 11-CV-5453, 2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2,

2011).  Moreover, a claim for declaratory judgment—a declaration of the parties' legal rights and obligations—is not the appropriate vehicle for seeking injunctive relief.  *See* 28 U.S.C. § 2201 (Declaratory Judgment Act provision permitting a court to "declare the rights and other legal relations of any interested party seeking such a declaration"); *Steffel v. Thompson*, 415 U.S. 452, 466, 469 (1974) (explaining that declaratory relief is designed "as an alternative to the strong medicine of the injunction").  At minimum, as an application of the "substantial discretion" courts have in deciding whether to grant declaratory relief, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *see Jenkins v. United States*, 386 F.3d 415, 417 (2d Cir. 2004), I decline to allow plaintiff to pursue this separate claim as a mechanism for seeking a remedy that would be available for breach of contract.

### C.  Breach of Fiduciary Duty (Count III)

Defendants next move to dismiss plaintiff's claim alleging breach of fiduciary duty.  *See* Compl. ¶ 177 at 79.  To state a claim for breach of fiduciary duty in New York, "a plaintiff must allege: '(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.'"  *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020) (quoting *United States Fire Ins. Co. v. Raia*, 94 A.D.3d 749, 751 (N.Y. 2012)).

The complaint alleges that Cardinal owed plaintiff a fiduciary duty for several reasons. These include that Cardinal was the exclusive licensee of plaintiff's marks in electronic games; that plaintiff gave Cardinal confidential business information relating to plaintiff's games; that plaintiff placed trust and confidence in Joel Berger and Cardinal, who "knowingly accepted and encouraged" that trust; that "the License Agreement expressly protected Plaintiff's confidential information"; and that Cardinal acted as plaintiff's "sales representative" to retailers like Walmart.

Compl. ¶¶ 180-189 at 79-81.  Plaintiff alleges that Cardinal breached this duty by "ma[king] secret arrangements to switch Walmart" from selling plaintiff's game to selling PassPlay, misusing plaintiff's confidential and proprietary information by giving it to Spin Master, and engaging in deceptive marketing with Spin Master in order to appropriate plaintiff's business.  *See id.* ¶¶ 190-193 at 81-82.  Plaintiff alleges financial harm as a result.  *See id.* ¶¶ 195-196 at 82-83.

Plaintiff has adequately alleged breach of fiduciary duty.  Because "[t]he existence of a fiduciary duty normally depends on the facts of a particular relationship . . .  a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)." *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006).  While "mere assertions of trust and confidence are insufficient," *ibid.* (quotations omitted), plaintiff's complaint is not so bare. Plaintiff describes a business relationship with Cardinal and Berger spanning several years, points to multiple agreements among the parties, and alleges the exchange of confidential business and proprietary information relating to plaintiff's games and marks.  *See* Compl. ¶¶ 180-189 at 79-81.

Defendants' arguments that the breach-of-fiduciary-duty claim should nevertheless be dismissed are unpersuasive.  Defendants dispute the accuracy of plaintiff's allegations, including plaintiff's characterization of the parties' business relationship.  *See* Defs.' Mem. at 16-18.  But these factual disputes are not appropriately resolved at the pleading stage.  Defendants also argue that plaintiff's breach-of-fiduciary-duty claim fails because the license agreement "expressly disclaims any fiduciary-type relationship."  Defs.' Reply at 8 (Dkt. #36).  But the relevant portion of the contract specifies only that "[n]othing *in this Agreement* shall be construed to make either party hereto the agent or representative of the other party."  License Agreement at 9 (emphasis added).  The Complaint sets out bases for a fiduciary relationship beyond the license agreement, alleging, for instance, that Cardinal assumed a role as plaintiff's sales representative to retailers

and that Cardinal and Berger encouraged plaintiff's trust. *See* Compl. ¶¶ 180-189 at 79-81.  Under these circumstances, the contractual provision on which defendants rely does not entitle them to dismissal of the breach-of-fiduciary claim.

This conclusion under New York law aligns with Judge Chappell's decision declining to dismiss the breach-of-fiduciary-duty claim in the related lawsuit before her.  Judge Chappell concluded that while the parties' licensing agreement indicated that the agreement did not itself establish an agency relationship, plaintiff had made "several separate factual allegations to establish a fiduciary duty," including allegations that were independent of the license agreement. *George & Co. LLC v. Spin Master Corp.*, No. 18-CV-154, 2018 WL 5268754, at *4 (M.D. Fla. Sept. 13, 2018).  While Judge Chappell applied Florida law, the elements of a breach-of-fiduciary-duty claim are substantially the same in Florida and New York.  *See Clark v. Ashland, Inc.*, 13-CV-794, 2017 WL 468213, at *14 (M.D. Fla. Feb. 3, 2017).  Defendants' motion to dismiss the claim for breach of fiduciary duty is denied.

### D.  Trademark Claims (Counts IV to XI)

Plaintiff brings several trademark claims: federal trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1) (Counts IV and V); contributory federal trademark infringement (Count VI); false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A) (Count VII); contributory false designation (Count VIII); unfair competition and contributory unfair competition under New York law (Counts IX and X); and conspiracy to infringe and unfairly compete (Count XI).  *See* Compl. ¶¶ 197-280 at 83-98.

While these trademark-related claims differ somewhat in their elements, each requires plaintiff to allege that plaintiff has valid rights in the marks and that defendant used the marks in commerce.  *See 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005)

(quoting 15 U.S.C. § 1114) (stating that to allege federal trademark infringement, a plaintiff must allege "that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) 'in connection with the sale . . . or advertising of goods or services,' (5) without the plaintiff's consent"); *VOX Amplification Ltd. v. Meussdorffer*, 50 F. Supp. 3d 355, 366 (E.D.N.Y. 2014) (noting that "the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims" except that New York common law also requires a showing of "bad faith").  Defendants move to dismiss the trademark-related claims on two grounds: that plaintiff has failed to allege valid rights in the first four marks on which plaintiff relies and that plaintiff has failed to allege defendants' use of the rest.  *See* Defs.' Mem. at 19-22.

      i.       **LEFT CENTER RIGHT and "Tagline and Arrows" Design (Marks 1-4)**

Defendants first argue that plaintiff has not sufficiently pleaded valid rights in the first four marks on which plaintiff relies.  *See ibid.*  These marks contain the word mark LEFT, CENTER, OR RIGHT—DON'T LOSE YOUR CHIPS! or LCR LEFT! CENTER! RIGHT! and a "Tagline and Arrows" design.  *See* Compl. ¶ 33(1)-(4) at 10.

Plaintiff has not adequately alleged valid rights in those marks.  "In order for a trademark to be protectable, the mark must be 'distinctive.'"  *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 216 (2d Cir. 2012).  A mark is distinctive if it is either "inherently distinctive," meaning that its "intrinsic nature serves to identify a particular source," or if the mark develops "'secondary meaning' in the public mind."  *Ibid.* (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)).  Plaintiff has previously litigated whether these four marks satisfy these requirements, in a trademark infringement lawsuit brought by plaintiff against Imagination Entertainment, Ltd., a predecessor-in-interest to Spin Master.  *See George &*

*Co., LLC v. Imagination Entm't Ltd.*, No. 7-CV-498, 2008 WL 2883771 (E.D. Va. July 25, 2008).
The United States District Court for the Eastern District of Virginia granted Imagination's motion
for summary judgment in that lawsuit, finding that plaintiff had failed to show that LEFT CENTER
RIGHT was either inherently distinctive or had acquired secondary meaning.  *See id.* at *8-*10.
The court also found that even if LEFT CENTER RIGHT were a valid mark, plaintiff had not
established ownership of the mark, because plaintiff abandoned the mark in 1992 and provided no
evidence that it had resumed use between 1992 and 2008.  *See id.* at *9.  In addition, the court
found that plaintiff had not established that the "Tagline and Arrows" design was distinctive or
that plaintiff owned it.  *See id.* at *10.  The Fourth Circuit affirmed for the same reasons.  *George
& Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 401-04 (4th Cir. 2009).

    That judgment has preclusive effect here.  A prior federal judgment has preclusive effect
if "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated
and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the
issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on
the merits."  *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006).  In the Fourth Circuit,
plaintiff had a full and fair opportunity to litigate whether it had trademark rights in LEFT
CENTER RIGHT or the "Tagline and Arrows" design as of 2008.  That issue was actually litigated
and decided, and its resolution was necessary to support the valid and final judgment in that case.
Accordingly, the Fourth Circuit decision collaterally estops plaintiff from relitigating whether it
had trademark rights in LEFT CENTER RIGHT or the "Tagline and Arrows" design as of 2008.

    Plaintiff argues that despite the *Imagination* decision, plaintiff may press trademark
infringement claims concerning the LEFT CENTER RIGHT and "Tagline and Arrows" design
marks because those marks have "since acquired secondary meaning."  Compl. ¶ 53 at 48.  But

that allegation, if true, would not be sufficient to support a claim of trademark infringement here. "In order to succeed on a claim of infringement based on secondary meaning, a plaintiff must show that 'the mark had acquired secondary meaning *before* its competitor commenced use of the mark.'" *Plasmart, Inc. v. Wincell Int'l Inc.*, 442 F. Supp. 2d 53, 60 (S.D.N.Y. 2006) (quoting *PaperCutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 564 (2d Cir. 1990)).  The parties do not dispute that Imagination, and its successor-in-interest Spin Master, began distributing the allegedly infringing game in 2007—a time at which *Imagination* establishes that the marks in question lacked secondary meaning.  *See* Compl. ¶ 51 at 47; *see also* Defs.' Mem. at 20.  Accordingly, plaintiff has not adequately alleged that whatever secondary meaning has developed in the LEFT CENTER RIGHT marks preceded defendants' use of those marks.

Plaintiff alternatively argues that the mere fact that these marks are federally registered is "proof that the marks are inherently distinctive and do not require secondary meaning."  Pl.'s Mem. in Opp. to Mot. to Dismiss at 29 ("Pl.'s Mem.") (Dkt. #32).  But federal registration of a trademark confers only a rebuttable presumption of validity—one that "evaporates as soon as evidence of invalidity is presented."  *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999).  The presumption of validity conferred by the federal registrations here is rebutted, because in light of the *Imagination* decision there is no dispute that defendants were using the marks before they acquired any distinctiveness.  Accordingly, plaintiff's trademark-related claims relating to its first four marks—LEFT CENTER RIGHT and the "Tagline and Arrows" design— are dismissed.

### ii.     LCR and Related Marks (Marks 5-18)

Defendants' second argument for dismissal of plaintiff's trademark-related claims is that, with respect to the marks "LCR," "PLAY LCR WITH CHIPS OR WHATEVER MAKES IT

FUN," "LCR WILD," and variations on these marks, *see* Compl. ¶ 33(5)-(18) at 10-12, plaintiff has not adequately alleged defendants' use of the marks, *see* Defs.' Mem. at 21-22.  The Lanham Act defines "use in commerce" as "bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark."  15 U.S.C. § 1127.  A mark is used in commerce "on goods when . . . it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto . . . and . . . the goods are sold or transported in commerce . . . ."  *Id.*  In order to allege "use in commerce," "[a] plaintiff is not required to demonstrate that a defendant made use of the mark in any particular way."  *Kelly-Brown v. Winfrey*, 717 F.3d 295, 305 (2d Cir. 2013).  "The element is satisfied if the mark is affixed to the goods 'in any manner.'"  *Ibid.* (quoting 15 U.S.C. § 1127).

Plaintiff has plausibly alleged that defendants used plaintiff's marks in commerce.  The complaint alleges that Cardinal and Spin Master distributed the game PassPlay, which bore the infringing labels "LeftCenterRight" and "LCR," to consumers through major retailers such as Walmart.  *See* Compl. at 23-24; *see also id.* ¶ 54 at 18-19 (alleging that PassPlay is not referred to by that name and is instead "sold and marketed as 'LCR' and as LeftCenterRight").  The complaint also includes photos of plaintiff's game and marks, as well as photos purporting to depict PassPlay labeled with the mark "LeftCenterRight" and packaged inside boxes labeled "LCR."  *See id.* at 27-28.  There may be differences between the use of "LCR" on plaintiff's game and PassPlay, but defendants do not argue that the packaging is dissimilar and therefore unlikely to cause confusion.  Defendants instead argue that plaintiffs have not alleged use.  Defs.' Mem. at 21-22.  As noted above, that claim is unpersuasive because the complaint includes both written allegations that PassPlay is sold and marketed as "LCR" and photos of packaging with that abbreviation.  *See* Compl. at 23-24.  Plaintiff has adequately alleged defendants' use of the LCR family of marks.

The motion to dismiss plaintiff's trademark-related claims is accordingly granted as to the LEFT CENTER RIGHT and "Tagline and Arrows" design marks, *see* Compl. ¶¶ 33(1)-(4) at 10, but denied as to plaintiff's remaining marks, *see id.* ¶¶ 33(5)-(18) at 10-12.

### E.  Fraud in the Inducement (Count XII)

Plaintiff next claims that Cardinal committed fraud in the inducement.  *Id.* ¶¶ 59-131 at 61-68; *id.* ¶¶ 281-357 at 99-106.  In New York, a plaintiff claiming fraud in the inducement must allege "(1) a material misrepresentation or omission that induced the party to sign [a] contract; (2) scienter; (3) reliance; and (4) injury."  *Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014).  Under Federal Rule of Civil Procedure 9(b), fraud must be pled with particularity.  The Second Circuit has interpreted Rule 9(b) to require that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).  The scienter element "may be alleged generally."  Fed. R. Civ. P. 9(b).

Plaintiff has not alleged fraudulent inducement with enough particularity to survive defendants' motion to dismiss.  To begin, the complaint does not clearly identify which statements serve as the basis for plaintiff's fraudulent inducement claim.  According to the complaint, after plaintiff and Cardinal executed a written license agreement for the electronic version of plaintiff's game, Joel Berger of Cardinal represented to plaintiff that Walmart was interested in distributing plaintiff's physical game as well.  Compl. ¶¶ 63-65 at 62.  The complaint alleges that plaintiff allowed "Cardinal [to] represent them with Walmart" and that "[t]he specific terms of this agreement were detailed in emails between the parties."  *Id.* ¶¶ 64-65 at 62.  To the extent that these emails are the basis for plaintiff's claim, plaintiff has not adequately alleged fraudulent

inducement because plaintiff has not identified whether or how the statements made in those emails were fraudulent.

Plaintiff also describes statements made between 2015 and 2017 by Berger and Donna Frankel of Cardinal, a person named Mike Goldstein, and Peter Smilanich of George & Co. Plaintiff has provided scant context for many of these communications, often failing to specify "where the statements were made" or to "identify the speaker," as is required to plead fraud with particularity. *Rombach*, 355 F.3d at 170; *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (stating that a plaintiff alleging fraud must "specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth" (quotations omitted)). For example, the complaint alleges that "Spin Master ask[ed]" plaintiff to "supply them with LCR dice" without specifying the participants, location, or context of this request, Compl. ¶ 311 at 102, and describes several interactions using the first person "I" without identifying who "I" is, *see id.* ¶¶ 349-350 at 105 (stating in the first person that Goldstein "asks for a phone number so Joel can reach me" but "I did not hear from Joel"). Moreover, the complaint does not adequately explain what about these statements was fraudulent.

Plaintiff's brief in opposition to dismissal sketches a somewhat clearer picture of plaintiff's fraudulent-inducement theory than the complaint. In the brief, plaintiff contends that Joel Berger represented to plaintiff around 2008 that Walmart was interested in distributing plaintiff's game and that the parties entered into an agreement allowing Cardinal to represent plaintiff to Walmart. Pl.'s Mem. at 25-27. Years later, in 2015, Berger allegedly represented to plaintiff that he would be "staying on" as a representative of Cardinal and that there would be "'no change' in the

agreement for at least five (5) years." *Ibid.* Plaintiff contends that Cardinal's motive in making these representations was to "mislead" plaintiff and "steal" or "counterfeit[]" plaintiff's game. *Id.* at 25-26. Plaintiff seems to suggest that Berger made a fraudulent statement by representing that he would maintain enough authority within Cardinal to guarantee that the distribution agreement would not change. *See id.* at 25-27.

Even if the complaint clearly set forth these facts, however, they would not suffice to allege fraudulent inducement. Most notably, plaintiff does not explain how Berger's statements, made in 2015, "induced plaintiff to sign [a] contract." *Schwartzco Enterprises*, 60 F. Supp. 3d at 344. The only agreement mentioned in connection with plaintiff's fraudulent inducement claim was allegedly made sometime between 2008 and 2010, and plaintiff provides no information about the duration or terms of that agreement. *See* Compl. ¶ 65 at 62. Nor has plaintiff adequately alleged reliance or injury. For example, plaintiff has not explained what actions plaintiff took based upon Berger's alleged assurance that the agreement would not change. The fraudulent inducement claim is accordingly dismissed.

## II. Motion to Dismiss for Lack of Personal Jurisdiction

Defendants Spin Master Corp. and Spin Master Ltd.—both Canadian corporations—have moved to dismiss the claims against those companies for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). When a defendant makes such a motion, the plaintiff bears the burden of showing that the court has jurisdiction over the defendants. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam). Before discovery has taken place, "a plaintiff is required only to make a *prima facie* showing by pleadings and affidavits that jurisdiction exists." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). Under that standard, "a complaint will survive a motion to dismiss for want of personal jurisdiction

so long as its allegations, taken as true, are 'legally sufficient allegations of jurisdiction.'" *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (quotations omitted). In this posture, the court must construe all pleadings and affidavits in the light most favorable to the plaintiff and resolve all doubts in his favor. *Penguin Grp. (USA) Inc. v. American Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).

A federal court generally may exercise personal jurisdiction over a foreign corporation only if doing so would be permissible under the law of the state in which the federal court is located. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (citing Fed. R. Civ. P. 4(k)(1)(A)); *see also Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). The Lanham Act does not provide any special jurisdictional rule. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004). Accordingly, whether personal jurisdiction exists depends on, first, whether the New York long-arm statute provides a basis for jurisdiction, and second, whether New York would be permitted to exercise personal jurisdiction under the Due Process Clause of the Fourteenth Amendment. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).

A plaintiff can establish jurisdiction over a defendant based on either "general" jurisdiction, meaning the defendant has such a substantial relationship with the forum that the court may "adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff," or "specific" jurisdiction, which exists when the cause of action in a case "arises out of the defendant's activities in a state." *Lockheed Martin*, 814 F.3d at 624. Here, plaintiffs have established neither general nor specific jurisdiction over Spin Master Corp. and Spin Master Ltd. in connection with this lawsuit.

### A.  General Jurisdiction

Plaintiffs have not established that the exercise of general jurisdiction over Spin Master Corp. and Spin Master Ltd. would be permitted under New York's long-arm statute or under principles of due process.  New York's long-arm statute provides for general jurisdiction only over "corporate defendants who are present in New York 'with a fair measure of permanence and continuity.'"  *Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 354 (S.D.N.Y. 2014) (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 565 N.E.2d 488, 490 (N.Y. 1990)).  And under the Due Process Clause of the Fourteenth Amendment, a State may exercise general jurisdiction over a foreign corporation only if the corporation's affiliations with the forum State "are so 'continuous and systematic' as to render [the corporation] essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014) (quotations omitted).  In *Daimler*, the Supreme Court explained that for a corporate defendant, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction."  *Id.* at 137 (citation and quotations marks omitted).  It explained that only in "an exceptional case" will a corporation's operations in a state that is not its state of incorporation or principal place of business be "so substantial and of such a nature" as to subject it to general jurisdiction in the courts of that state.  *Id.* at 139 n.19.

Plaintiff's allegations are insufficient to make a *prima facie* showing of general jurisdiction over the Canadian Spin Master entities.  Plaintiff does not dispute that Spin Master Corp. and Spin Master Ltd. are organized under the laws of Canada and have their principal place of business in Canada.  *See* Compl. ¶¶ 6, 8 at 3.  Plaintiff instead relies on allegations that the entities conduct "a substantial volume of business in the state"; that "Spin Master" advertised the allegedly infringing product at a New York toy fair; and that Spin Master Corp. has signed a six-year lease to rent a

25,000-square-foot office in Long Island City.  *See ibid.*; *see also id.* ¶ 56 at 19.  Even assuming that plaintiff's allegations are true, they do not amount to a *prima facie* case that the Canadian Spin Master entities have such "continuous and systematic" affiliations with New York as to render them "at home" there.  *Daimler*, 571 U.S. at 138-39.  Put differently, the contacts that plaintiff alleges do not present "an exceptional case" giving rise to general jurisdiction in a state other than the state of incorporation or principal place of business.  *Id.* at 137.

### B.  Specific Jurisdiction

Plaintiff has also failed to show a statutory or constitutional basis for specific jurisdiction over Spin Master Corp. and Spin Master Ltd.  New York's long-arm statute provides that a court may exercise specific jurisdiction over a non-domiciliary only as to claims that arise out of the defendant's business transactions within the State.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (citing N.Y. C.P.L.R. 302(a)(1)).  And the Due Process Clause allows a State to exercise specific jurisdiction only over a controversy that "is related to or arises out of a defendant's contacts with the forum."  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quotations omitted).

Plaintiff has not set forth a *prima facie* basis to conclude that its claims arise out of Spin Master Corp. and Spin Master Ltd.'s contacts with New York.  While plaintiff alleges that the Canadian Spin Master defendants do "a substantial volume of business" in New York and occupy office space in Long Island City, Compl. ¶¶ 6, 8 at 3, plaintiff does not allege that the claims in this lawsuit arise from the "substantial business" that the Canadian Spin Master entities have allegedly conducted in New York.  For instance, plaintiff has not alleged that Spin Master Corp. or Spin Master Ltd. entered into any sale, contract, or delivery, involving PassPlay or plaintiff's game in New York.

Nor has plaintiff set out a *prima facie* basis for specific jurisdiction by alleging that Spin Master Corp. operates the website www.spinmaster.com, *id.* ¶ 7 at 3, through which it has allegedly "copied Plaintiff's federally registered marks" and directed customers to purchase an allegedly infringing product "online and at retailers with nationwide distribution," thereby "aid[ing] and abet[ting] Cardinal in its infringement," *id.* ¶¶ 37-39 at 12-13.  Insofar as plaintiff suggests that this website supports personal jurisdiction because it can be accessed by New York residents, those allegations are insufficient because such online marketing does not establish that the Canadian Spin Master defendants "transacted business" within the meaning of the state's long-arm statute. *See A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 569 (E.D.N.Y. 2011) ("The existence of a website that can be accessed by New York residents is particularly insufficient to justify the exercise of personal jurisdiction where there is absolutely no degree of commercial activity that actually occurred."); *see also Boyce v. Cycle Spectrum, Inc.*, 148 F. Supp. 3d 256, 269 (E.D.N.Y. 2015).  The motion to dismiss under Rule 12(b)(2) is accordingly granted.

## CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part.  Plaintiff's claim for breach of contract based on an unspecified distribution agreement is dismissed, as are plaintiff's claim seeking a declaratory judgment, plaintiff's claims of trademark infringement as to the LEFT CENTER RIGHT and "Tagline and Arrows" design marks, and plaintiff's claim of fraud in the inducement.  Defendants Spin Master Corp. and Spin Master Ltd. are dismissed from the case

based on lack of personal jurisdiction.  Plaintiff may proceed with its remaining claims against the

remaining defendants.

      SO ORDERED.


                      */s/ Rachel Kovner*
                      RACHEL P. KOVNER
                      United States District Judge

Dated:  November 30, 2020
         Brooklyn, New York