UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GEORGE & COMPANY LLC,

                    Plaintiff,

    *v.*

SPIN MASTER U.S. HOLDINGS, INC.,
SPIN MASTER, INC., CARDINAL
INDUSTRIES, INC., WALMART, INC., a
foreign profit corporation, and JOEL
BERGER, an individual,

                    Defendants.

**REPORT &
RECOMMENDATION**
19-CV-4391-DG-SJB
19-CV-4883-DG-SJB

**BULSARA, United States Magistrate Judge:**

This report and recommendation addresses Plaintiff George & Company LLC's

motion to dismiss counterclaims for trademark cancellation in this long-running

litigation about the dice-game "Left Center Right," and concludes that dismissal is

inappropriate.

George & Company LLC ("George & Co.") commenced this action against Spin

Master Corp.; Spin Master US Holdings, Inc.; Spin Master Ltd.; Spin Master, Inc.;

Cardinal Industries, Inc.; WalMart, Inc.; and Joel Berger, on July 31, 2019.[1]  Following

the dismissal of Spin Master Corp. and Spin Master Ltd., the remaining defendants

answered on December 14, 2020.[2]  In the same pleading, Spin Master, Inc. ("Spin

Master") filed two counterclaims against George & Co. seeking the cancellation of 17

_____

[1] Compl. For Damages and Injunctive Relief dated July 30, 2019 ("Compl."), Dkt.
No. 1.

[2] Defs.' Answer to Compl. and Countercls. dated Dec. 14, 2020 ("Countercls."),
Dkt. No. 52.

trademarks, pursuant to 15 U.S.C. § 1064 and 15 U.S.C. § 1119.[3]  George & Co. then moved to dismiss the counterclaims.[4]  For the reasons outlined below, the Court respectfully recommends the motion to dismiss be denied.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case is one battle of many these parties have fought in their decade-plus war for trademark supremacy.  The trademarks relate to a dice game that uses specially marked dice and playing chips.[5]  Versions of the game are sold at popular retailers, including Amazon.com, Walmart, Target, and Kohl's.[6]  George & Co.'s 17 trademarks at issue here protect various formulations of the names and designs LEFT CENTER RIGHT and LCR for versions of its games, including for different visual styles and types of gameplay.[7]  Given the long history of litigation between the parties, the procedural history consists of the events pertinent to the present motion.

In February 2020, all defendants moved to dismiss the Complaint.  District Judge Rachel P. Kovner[8] granted the defendants' motion to dismiss in part and denied it in part.[9]  Relevant to this motion, the District Court dismissed Spin Master Corp. and

---

[3] *Id.*

[4] Notice of Pl.'s Mot. to Dismiss for Failure to State a Claim dated Mar. 6, 2021, Dkt. No. 60.

[5] Compl. ¶¶ 24, 33.

[6] *Id.* ¶¶ 29, 228.

[7] *Id.* ¶ 33.

[8] The case was reassigned to the Honorable Diane Gujarati on December 17, 2020.  (Order dated Dec. 17, 2020).  Prior to the reassignment, Judge Kovner referred the present motion to the undersigned.

[9] Mem. and Order dated Nov. 30, 2020 ("Nov. 30 Order"), Dkt. No. 50, at 24.

Spin Master Ltd.[10]  The remaining defendants answered the Complaint and Spin Master

filed two counterclaims seeking the cancellation of 17 of George & Co.'s marks.[11]

The first counterclaim seeks cancellation of four of George & Co.'s federally

registered trademarks.  Spin Master refers to these marks as the "LEFT CENTER

RIGHT Marks," and they are:

> (1)  LEFT, CENTER, OR RIGHT – DON'T LOSE YOUR CHIPS!,
> Registration No. 4,519,607, registered April 29, 2014 (the "'607
> Mark");
>
> (2)  LEFT, CENTER, OR RIGHT – DON'T LOSE YOUR CHIPS!,
> Registration No. 5,091,344, registered November 29, 2016 (the "'344
> Mark");
>
> (3)  LCR LEFT! CENTER! RIGHT! and design, Registration No. 4,519,608,
> registered April 29, 2014 (the "'608 Mark");
>
> (4)  LCR LEFT! CENTER! RIGHT! and design, Registration No. 5,091,343,
> registered November 29, 2016 (the "'343 Mark").[12]

This counterclaim seeks cancellation on two grounds.  The first is that George & Co. did

not possess valid trademark rights in the marks after the Eastern District of Virginia

invalidated several of George & Co.'s marks, a decision that the Fourth Circuit

affirmed.[13]  The second is that George & Co. obtained the marks by committing fraud on

the United States Patent and Trademark Office ("PTO").[14]  Spin Master's fraud

---

[10] *Id*. at 24–25.

[11] Countercls. ¶¶ 22, 33.

[12] Countercls. ¶ 7; *see also* George & Co.'s Reply to Spin Master Inc.'s Opp'n to
Mot. to Dismiss Countercls. dated Apr. 16, 2021 ("Reply"), Dkt. No. 63, at 7.

[13] Countercls. ¶¶ 8–13.

[14] *Id*. ¶¶ 14–22.

allegations aver that Peter Smilanich, George & Co.'s President, filed two declarations with the PTO in 2016 falsely indicating that no other entity was using a mark similar to the LEFT CENTER RIGHT mark.  However, by that point George & Co. was litigating with Spin Master over its marks, and neither Smilanich nor George & Co.'s counsel, Jennifer Whitelaw, disclosed Spin Master Ltd.'s registration and use of a LEFT CENTER RIGHT mark or the existence and outcome of the civil litigation to the PTO.[15]

The second counterclaim alleges that 13 other marks George & Co. has registered are subject to cancellation because they have become generic.[16]  These marks, referred to by Spin Master as the "LCR Marks," are:

(5)   LCR and design, Registration No. 2,802,321, registered January 6, 2004;

(6)   LCR, Registration No. 2,989,658, registered August 30, 2005;

(7)   PLAY LCR WITH CHIPS OR WHATEVER MAKES IT FUN FOR YOU, Registration No. 3,854,443, registered September 28, 2010;

(8)   LCR, Registration No. 3,917,337, registered February 8, 2011;

(9)   LCR, Registration No. 3,917,401, registered February 8, 2011;

(10)  PLAY LCR WITH CHIPS OR WHATEVER MAKES IT FUN FOR YOU, Registration No. 3,922,749, registered February 22, 2011;

(11)  LCR and design, Registration No. 4,002,630, registered July 26, 2011;

(12)  LCR and design, Registration No. 4,119,570, registered March 27, 2012;

(13)  LCR, Registration No. 4,132,929, registered April 24, 2012;

---

[15] *Id.* ¶ 18.

[16] *Id.* ¶¶ 23–33.

(14)   LCR LCR LCR LCR and design, Registration No. 4,229,002, registered October 23, 2012;

(15)   LCR, Registration No. 4,006,384, registered August 2, 2011;

(16)   LCR and design, Registration No. 4,201,291, registered September 4, 2012;

(17)   LCR WILD, Registration No. 4,419,874, registered October 15, 2013.[17]

In support of its claim that these marks have become generic, Spin Master alleges that the public "uses the abbreviation 'LCR' as a colloquial phrase or shorthand for" Spin Master's own Left Center Right dice game, as well as similar dice games marketed by neither party.[18]  Furthermore, Spin Master alleges that George & Co. has failed to police the market.[19]  And as a result, whatever protected or unique meaning "LCR" or these marks held has now dissipated.

George & Co. seeks dismissal of the two counterclaims on a variety of grounds: that the claims needed to be filed as compulsory counterclaims in the prior proceeding between the parties before the PTO's Trademark Trial and Appeal Board ("TTAB"); the claims are barred by res judicata and collateral estoppel; the first counterclaim is plead with insufficient particularity under Federal Rule of Civil Procedure 9(b); and the LCR Marks are not generic.[20]

---

[17] *Id.* ¶ 23; Trademark Search, Trademark Status & Document Retrieval, United States Patent and Trademark Office, tsdr.uspto.gov (last visited Nov. 15, 2021).

[18] Countercls. ¶¶ 23–28.

[19] *Id.* ¶ 28.

[20] Mem. of P. & A. in Support of Pl.'s Mot. to Dismiss for Failure to State a Claim dated Mar. 6, 2021 ("Mem."), Dkt. No. 61, at 6–19.

Two prior proceedings between the parties are relevant to the disposition of this motion to dismiss. *First*, George & Co. sued Imagination Entertainment Limited, Imagination Holdings Pty Ltd., and Imagination DVD, Inc. (collectively, "Imagination") for trademark infringement in the Eastern District of Virginia in 2008. *George & Co., LLC v. Imagination Ent. Ltd.*, No. 07-CV-498, 2008 WL 2883771, at *1 (E.D. Va. July 25, 2008), *aff'd*, 575 F.3d 383 (4th Cir. 2009). Imagination sold its own version of the dice game under the name "LeFT CeNTeR RIGHT" and subsequently as "LEFT CENTER RIGHT." *Id.* at *1, *1 n.3. Spin Master "is Imagination's successor-in-interest."[21] Among the marks at issue in the litigation were two LCR Marks that are the subject of the second counterclaim: Nos. 2,802,321 (Mark No. 5) (for "LCR") and 2,989,658 (Mark No. 6) (for the LCR Rolling-Dice Design). *Id.* at *1. George & Co. also claimed that it possessed common law rights in an unregistered mark, LEFT CENTER RIGHT, that Imagination also infringed. *Id.* In resolving cross-motions for summary judgment, the District Court granted Imagination's motion for summary judgment on the infringement claims, concluding it had not infringed either of the two marks identified by George & Co., and found that George & Co. had no trademark rights in LEFT CENTER RIGHT. *Id.* at *8–11. The Fourth Circuit affirmed.[22]

---

[21] Spin Master, Inc.'s Opp'n to George & Company, LLC's Mot. to Dismiss Countercls. dated Mar. 29, 2021 ("Opp'n"), Dkt. No. 62, at 3.

[22] *George & Co. LLC*, 575 F.3d at 400 ("However, the most significant factor, actual confusion, weighs decidedly against George. This factor, along with the weakness of the LCR mark, the lack of similarity between the two marks, and the lack of predatory intent, leads to the inescapable conclusion that there is no likelihood of confusion as a matter of law between Imagination's use of LEFT CENTER RIGHT and George's use of LCR. In fact, we are aware of no case where a court has allowed a trademark infringement action to proceed beyond summary judgment where two weak marks were dissimilar, there was no showing of a predatory intent, and the evidence of actual

*Second*, Imagination (and later Spin Master Ltd.) sought to register four separate marks, including LEFT, RIGHT AND CENTER before the PTO.[23]  George & Co. opposed the registration on multiple grounds, including that these marks would be confused with its own marks.[24]  *See generally B&B Hardware v. Hargis Indus.*, 135 S. Ct. 1293, 1299 (2015) ("Under the Lanham Act . . . an applicant can seek to register a trademark through an administrative process within the [PTO] . . . But if another party believes the PTO should not register a mark because it is too similar to its own, that party can oppose registration before the Trademark Trial and Appeal Board (TTAB)." (internal citation omitted)).[25]

After the Fourth Circuit's decision in the civil case, Imagination sought to use that decision to seek claim and issue preclusion in the TTAB opposition proceeding.  The TTAB concluded that claim preclusion was inapplicable because a finding of non-

_____

confusion was de minimis.  Accordingly, the district court did not err in granting summary judgment to Imagination on George's claim that Imagination's use of LEFT CENTER RIGHT federally infringed on George's use of LCR.").

[23] Spin Master, Ltd., not Spin Master, which is asserting the counterclaims, was party to the PTO and TTAB proceeding.

[24] George & Co. filed four oppositions. Opposition No. 91183088, Notice of Opp'n, Dkt. No. 1, at 1 (T.T.A.B. Mar. 18, 2008); Opposition No. 91183968, Notice of Opp'n, Dkt. No. 1, at 1–2 (T.T.A.B. May 7, 2008); Opposition No. 91190850, Notice of Opp'n, Dkt. No. 1, at 1 (T.T.A.B. June 30, 2009); Opposition No. 91192640, Notice of Opp'n, Dkt. No. 1, at 1 (T.T.A.B. Nov. 11, 2009).

[25] The procedure is as follows: first, "[t]o obtain the benefits of registration, a mark owner files an application with the PTO," *B&B Hardware*, 135 S. Ct. at 1300; and second, "[i]f a trademark examiner believes that registration is warranted, the mark is published in the Official Gazette of the PTO." *Id.*  "At that point, [a]ny person who believes that he would be damaged by the registration may file an opposition. Opposition proceedings occur before the TTAB (or panels thereof)." *Id.* (alteration in original) (internal citations and quotations omitted).

infringement (a claim of interference) rendered by the Fourth Circuit was not the same claim as the confusion claim before the TTAB (a claim of injury from registration of the mark itself).[26]  The TTAB also found that issue preclusion was likewise inapplicable because the marks at issue in three of the consolidated opposition proceedings were different than those adjudicated before the Fourth Circuit.[27]  And with respect to the overlapping mark in the fourth proceeding, the services associated with it, "namely, the recording, storage and subsequent transmission of voice messages and games by telephone,"[28] were different than the services associated with the marks in the prior litigation.[29]  A few months after the decision denying preclusion was rendered, Imagination and Spin Master Ltd. withdrew the registration applications.[30]  Because George & Co.'s consent was not obtained prior to the withdrawal, judgment was entered against Imagination and Spin Master Ltd., and registration of the four marks was refused.[31]

---

[26] Opposition No. 91183088, Dkt. No. 30, at 8 (T.T.A.B. Mar. 27, 2013) ("TTAB Summ. J. Op."), attached as Ex. E to Opp'n.

[27] *Id.* at 8–9.

[28] Opposition No. 91190850, Notice of Opp'n, Dkt. No. 1, at 1 (T.T.A.B. June 30, 2009) (listing goods and services affected by the opposition).

[29] TTAB Summ. J. Op. at 9–10.

[30] Opposition No. 91183088, Abandonment of Appl., Dkt. No. 32 (T.T.A.B. July 10, 2013) ("Abandonment of Appl.").

[31] Opposition No. 91183088, Dkt. No. 33 (T.T.A.B. July 16, 2013).

DISCUSSION

I.    Legal Standard

"The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of [a] . . . claim[] for relief." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).  In deciding such a motion, the Court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (quotations and alteration omitted)*; Amadei*, 348 F. Supp. 3d at 155 ("[W]hen reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of [the non-moving party].").

Once the facts are construed in the light most favorable to the non-moving party—here, Spin Master—to avoid dismissal there must be sufficient facts that allege a plausible claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal citation and quotations omitted)); *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019) ("[A] new counterclaim, like all pleadings, must conform to the pleading requirements of *Twombly* and *Iqbal*.").  "[A] district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.  Of course, it may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

9

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (citation and quotations omitted).  In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (internal citations omitted).  The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Escamilla v. Young Shing Trading* Co., No. 17-CV-652, 2018 WL 1521858, at *2 (E.D.N.Y. Jan. 8, 2018), *report and recommendation adopted*, 2018 WL 1033249 (Feb. 23, 2018).

II.    Res Judicata and Collateral Estoppel

In evaluating George & Co.'s collateral estoppel and res judicata defenses on a Rule 12(b)(6) motion, the Court's inquiry is "limited to" the pleadings, "documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 497 (2d Cir. 2014); *Williams v. New York City Hous. Auth.*, No. 19-CV-918, 2019 WL 1765081, at *3 (E.D.N.Y. Apr. 22, 2019) (applying same to collateral estoppel) (citing *TechnoMarine*, 758 F.3d at 498), *aff'd*, 816 F. App'x 532 (2d Cir. 2020).  And as relevant here, the Court takes judicial notice of the

"underlying records of the TTAB proceeding."[32] *Santos v. Hecht*, No. 06-CV-783, 2006 WL 2166850, at *1 n.1 (E.D.N.Y. July 31, 2006).

A.    Collateral Estoppel

George & Co. argues that collateral estoppel bars Spin Master's two counterclaims.  That is, they argue that the validity of George & Co's trademarks was already decided in the TTAB proceeding and cannot be relitigated here.  (Mem. at 9–11; Reply at 4–7).  Collateral estoppel, or issue preclusion, "precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020).  "[I]ssue preclusion is not limited to those situations in which the same issue is before two *courts*.  Rather, where a single issue is before a court and an administrative agency, preclusion also often applies." *B&B Hardware*, 135 S. Ct. at 1303.  To that end, "a court should give preclusive effect to TTAB decisions if the ordinary elements of issue preclusion are met." *Id.* at 1299.  And those elements are

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

*Purdy v. Zeldes*, 337 F.3d 253, 258 (2d. Cir. 2003).[33]  "[C]ollateral estoppel does not bar a litigant from subsequently pursuing issues that were not raised in the first proceeding,

---

[32] The Court declines to take judicial notice of any of the other documents the parties have proffered.  Specifically, the Court does not take judicial notice of Exhibits A and D in George & Co.'s Reply papers because they are not from the TTAB proceeding.

[33] "[F]ederal courts apply federal law in determining the preclusive effect of a federal judgment." *Speedfit LLC v. Chapco Inc.*, 490 F. Supp. 3d 575, 586 (E.D.N.Y. 2020) (alteration in original) (quotations omitted); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (same).

but 'could have been.'" *Flaherty v. Lang*, 199 F.3d 607, 613 (2d Cir. 1999) (quoting *Leather v. Eyck*, 180 F.3d 420, 426 (2d Cir. 1999)).

George and Co. cannot satisfy the first element. "[T]he obvious starting point in a preclusion analysis is a determination of the issues that were litigated in the first action." *Id.* The TTAB proceeding resolved two issues: first, whether the Fourth Circuit decision could have preclusive effect in the TTAB proceeding itself, and second, whether Imagination and Spin Master Ltd. could register four marks. The TTAB concluded no on each issue. Neither issue is pertinent to either counterclaim now being asserted by Spin Master.

Spin Master's first counterclaim asserts that the four LEFT CENTER RIGHT marks should be cancelled on three grounds: (1) George & Co. lacks valid trademark rights in these marks, as the Fourth Circuit found, (Countercls. ¶ 10); (2) these marks are merely descriptive, (*id.* ¶ 13); and (3) George & Co. committed fraud on the PTO when prosecuting these marks, (*id.* ¶ 14). The TTAB litigation resolved none of these issues, nor could it have, because the litigation involved the attempted registration of Spin Master Ltd.'s marks, not George & Co.'s. "*A fortiori,* if the TTAB considers a different mark altogether, issue preclusion would not apply." *B&B Hardware*, 135 S. Ct. at 1308. The TTAB had no occasion to opine on the validity of George & Co.'s marks or whether it committed fraud before the PTO. And the discussion of the Fourth Circuit decision by the TTAB was only to invalidate Spin Master Ltd.'s attempt to invoke preclusion, not to decide whether the George & Co. marks at issue here were invalid or generic or whether fraud was committed. (TTAB Summ. J. Op. at 9).

The second counterclaim asserts that George & Co.'s 13 LCR Marks should be cancelled because they are generic. (Countercls. ¶ 28). Again, this issue was not

addressed in the TTAB proceeding, which involved Spin Master Ltd.'s registration of its marks, not George & Co.'s marks, let alone whether they were generic.

Nonetheless, George & Co. paints the TTAB proceeding as one involving the validity of its trademarks.  (Mem. at 10 ("Defendants had full and fair opportunities to litigate . . . George & [Co.]'s registered LEFT CENTER RIGHT Marks and LCR Marks at the TTAB[.]")).  This most certainly was not the case—the TTAB resolved the attempted registration of marks by Imagination and Spin Master Ltd.  The only context in which George & Co.'s marks even came up was in its opposition to Spin Master Ltd.'s attempted registration—when George & Co. asserted that the new marks would cause confusion with its marks—but that "issue" was never litigated to completion, since Spin Master Ltd. withdrew its registration applications and registration was denied in light of the withdrawal.  *E.g.*, Opposition No. 91183088, Notice of Opp'n, Dkt. No. 1, at 1 (T.T.A.B. Mar. 18, 2008); *see also* Abandonment of Application.

Because the issues litigated in the TTAB proceeding and the present case are not the same, issue preclusion cannot bar Spin Master's counterclaims.[34]  *See*, *e.g.*, *Save The Child. Fed'n Inc. v. Larry Jones Int'l Ministries Inc.*, No. 5:91-CV-300, 1996 WL 302694, at *3 (D. Conn. Mar. 5, 1996) ("Nothing in the TTAB's decision indicates that the issue of genericness was raised, litigated, or actually decided.").

---

[34] In light of the absence of any issue overlap, the Court does not reach the issues of whether issue preclusion is appropriate on the basis of a default judgment or against Spin Master on the basis of a judgment against Spin Master Ltd.

13

B.   Res Judicata

George & Co. also contends that the two counterclaims are barred by claim

preclusion, "sometimes itself called res judicata." *Lucky Brand Dungarees*, 140 S. Ct. at

1594.

> [C]laim preclusion prevents parties from raising issues that could have been
> raised and decided in a prior action—even if they were not actually litigated.
> If a later suit advances the same claim as an earlier suit between the same
> parties, the earlier suit's judgment "prevents litigation of all grounds for, or
> defenses to, recovery that were previously available to the parties,
> regardless of whether they were asserted or determined in the prior
> proceeding."

*Id.* (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).

> To prove the affirmative defense [of *res judicata*] a party must show that (1)
> the previous action involved an adjudication on the merits; (2) the previous
> action involved the plaintiffs or those in privity with them; [and] (3) the
> claims asserted in the subsequent action were, or could have been, raised in
> the prior action.

*TechnoMarine*, 758 F.3d at 499 (alterations in original) (quoting *Monahan v. N.Y.C.*

*Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)).  "Suits involve the same claim (or

'cause of action') when they 'aris[e] from the same transaction,'" *Lucky Brand*, 140 S. Ct.

at 1595 (alterations in original) (quoting *United States v. Tohono O'odham Nation*, 563

U.S. 307, 316 (2011)), or "involve a common nucleus of operative facts."  *Id.* (quotations

omitted).

George & Co.'s res judicata argument is resolved on the basis of the third

element—whether the counterclaims asserted here were, or could have been asserted, in

the TTAB proceeding.  The answer is no.

As noted in resolving the collateral estoppel defense, the claims here were not

raised in the TTAB proceeding.  Spin Master did not seek cancellation of either George &

Co.'s LCR or LEFT CENTER RIGHT marks in the TTAB proceeding.  Again, the TTAB

proceeding concerned Spin Master Ltd.'s attempted registration of marks, not the validity or cancellation of George & Co.'s marks. *E.g.*, *Lucky Brand*, 140 S. Ct. at 1596 ("[T]he 2011 Action involved different marks, different legal theories, and different conduct—occurring at different times. Because the two suits thus lacked a 'common nucleus of operative facts,' claim preclusion did not and could not bar Lucky Brand from asserting its settlement agreement defense in the 2011 Action.").

As to whether Spin Master could have raised cancellation of George & Co.'s marks in the TTAB proceeding, the analysis is more complex, but the result is the same.

> Whether a claim that was not raised in the previous action could have been raised therein "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first."

*TechnoMarine*, 758 F.3d at 499 (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992)). "When analyzing whether a claim is based on the same transaction or occurrence, courts must be mindful that a claim 'arising subsequent to a prior action . . . [is] not barred by *res judicata*[.]'" *Id.* (quoting *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 383 (2d Cir. 2003)). There are "two categories of cases where post-judgment conduct constitutes a new claim falling outside the parameters of claim preclusion." *Id.* at 499–500. The first is "when post-judgment conduct is sufficient to state a cause of action on its own—without the need to incorporate facts that preceded the first suit[.]" *Id.* at 500. "Claim preclusion generally does not bar claims that are predicated on events that postdate the filing of the initial complaint." *Lucky Brand*, 140 S. Ct. at 1596 (quotations omitted). The second is "[w]hen a subsequent action involves a claim over 'ongoing conduct' and it relies on facts that occurred both before and after the earlier action commenced[.]" *TechnoMarine*, 758 F.3d at 501. (citation omitted). In such a

situation, claim preclusion will not apply if there are "legally significant acts occurring *after* the filing of a prior suit that was itself based on earlier acts." *Id.* (quoting *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 113 (2d Cir. 2001)).

Here, the alleged conduct that forms the basis of both of Spin Master's counterclaims postdates the completion of the TTAB proceeding. As a result, claim preclusion—based on a theory that Spin Master "could have alleged cancellation"—is inapplicable.

The first counterclaim seeks cancellation of the four LEFT CENTER RIGHT trademarks, which were all registered in 2014 or later. (Countercls. ¶ 7). The TTAB proceeding closed on July 16, 2013. Opposition No. 91183088, Dkt. No. 34 (T.T.A.B. July 16, 2013). Spin Master could not have challenged marks registered in 2014 in the TTAB proceeding that ended in 2013. "[A] judgment[] does not ordinarily bar claims that have not yet accrued." *TechnoMarine*, 758 F.3d at 504; *see, e.g.*, *id.* at 496 ("[W]e conclude that *res judicata* does not bar the alleged trademark and other unfair business practice claims that arose *after* the original settlement agreement between the parties.").

The second counterclaim seeks cancellation of 13 LCR marks registered from 2004 to 2013. Trademark Search, Trademark Status & Document Retrieval, United States Patent and Trademark Office, tsdr.uspto.gov (last visited Nov. 15, 2021); (Countercls. ¶ 23). In alleging that these marks are generic, Spin Master relies on three pieces of evidence: (1) a You Tube video, (*id.* ¶ 25); (2) a webpage devoted to games and puzzles, (*id.* ¶ 26); and (3) a wikihow.com webpage, (*id.* ¶ 27). The dates of this evidence range from 2016 to 2020, (*id.* ¶¶ 25–27), which postdates the conclusion of the TTAB proceeding. In other words, because Spin Master's theory of invalidity is based on

the marks becoming generic after the TTAB proceeding ended, claim preclusion is inapplicable. *E.g.*, *Lucky Brand*, 140 S. Ct. at 1596 (denying claim preclusion where basis of trademark of challenge was events after first proceeding concluded). Perhaps there is evidence that these marks became generic before the TTAB proceeding ended in 2013, but Spin Master does not rely on any. In any event,

> [e]ven if a mark was held valid and not a generic name in past litigation, there should be an opportunity for a challenger to show that since that decision, the facts have changed—public perception of the designation has modified so that now it has become used by a majority as a generic name of a thing, not as a trademark.

6 McCarthy on Trademarks and Unfair Competition § 32:88 (5th ed.). The presumption against applying claim preclusion on post-judgment facts "takes on particular force in the trademark context, where the enforceability of a mark and likelihood of confusion between marks often turns on extrinsic facts that change over time." *Lucky Brand*, 140 S. Ct at 1596; *cf. Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1328 (Fed. Cir. 2008) ("We have in particular recognized that the public policy in favor of allowing challenges to invalid marks weighs in favor of cabining the doctrine of res judicata at the Patent and Trademark Office.").

The unavailability of claim preclusion also disposes of George & Co.'s arguments about Spin Master's failure to file a compulsory counterclaim challenging its marks in the TTAB proceeding. The TTAB rule requiring the filing of compulsory counterclaims requires that "[a] defense attacking the validity of any one or more of the registrations pleaded in the opposition shall be a compulsory counterclaim *if grounds for such counterclaim exist at the time when the answer is filed*." 37 C.F.R. § 2.106(b)(3)(i) (emphasis added). Spin Master's first counterclaim could not have been filed in the TTAB proceeding, since here it challenges marks not issued until after the proceeding

was closed.  And the grounds for challenging the 13 marks that are the basis for the second counterclaim were also not present until after the proceeding concluded.[35] There is, thus, no basis to preclude Spin Master's counterclaims for failure to allege them in the TTAB proceeding.

\*                    \*                    \*                    \*

Both sides sidestep significant issues in their briefing of claim preclusion.  While the Supreme Court decided in *B&B Hardware* that issue preclusion is appropriate for issues litigated in a TTAB proceeding and a federal court action, it has not opined on the availability of claim preclusion in such a circumstance.  A number of cases hold that a TTAB proceeding that is exclusively a registration and opposition proceeding has *no* claim preclusive effect in a subsequent federal court infringement action.  For instance, in *Tonka Corp. v. Rose Art Indus.*, 836 F. Supp. 200 (D. N.J. 1993), the court held that a defendant's genericness counterclaim was not barred by claim preclusion because "[i]t is well-established that the entitlement to register a trademark, or lack thereof, is not dispositive of the entitlement to use of the trademark for the purposes of an infringement action."  *Id.* at 213.  In other words, a genericness counterclaim in a TTAB proceeding would only invalidate the registration of the opposing party.  It "could not have rendered the opponent's mark unprotectable against infringement or given the

---

[35] George & Co. also ignores the fact that in the TTAB proceedings, while opposing Spin Master Ltd.'s registrations, it only raised two registered marks, namely Nos. 2,989,658 and 2,802,321.  Even if Spin Master had to challenge those two marks as generic—which they did not—an additional 11 marks are the basis of the second counterclaim here.  George & Co.'s opposition in the TTAB proceeding also raised seven applications for marks that it subsequently registered.  But its briefing does not indicate whether any of those applications were granted; in any event, any registration would have occurred after the TTAB proceeding ended, making the application of claim preclusion inappropriate.

applicant the right to use its mark." *Id*. at 217.  As applied here, if Spin Master had

asserted genericness challenges in response to George & Co.'s opposition to Spin Master

Ltd.'s marks, and prevailed, the result—at best—would have invalidated George & Co.'s

registration.  George & Co. would still have been able to sue Spin Master for

infringement of those same marks (even if unregistered).  As a result, it would be

inappropriate to apply claim preclusion (or for that matter find that the TTAB

compulsory counterclaim rule barred the federal court claim) in this federal action.  *See*

*id*. at 215, 217.  Other district courts have followed the reasoning of *Tonka*.  *E.g.*, *Santos*,

2006 WL 2166850, at *2 ("[C]ourts have repeatedly held that there is no res judicata

effect of a cancellation proceeding such as the TTAB proceeding here, on a subsequent

federal lawsuit alleging unfair competition and trademark infringement.") (Bianco, J.)

(collecting cases).  These authorities, of course, predate *B&B Hardware*, which applied

issue preclusion from a TTAB proceeding, and *Lucky Brands*, which endorsed claim

preclusion from one federal court action to another.  But neither addressed the type of

inter-jurisdictional claim preclusion raised by the parties here.  It is, of course,

unnecessary to resolve this interesting, yet complicated, question since even assuming

that claim preclusion from a TTAB proceeding is appropriate, on the facts here the

defense fails for the reasons stated.

III.   <u>Other Challenges to Counterclaims</u>

    A.   <u>Pleading Fraud with Particularity</u>

"'Fraud in procuring a trademark registration . . . occurs when an applicant

knowingly makes false, material representations of fact in connection with his

application.'"  *MPC Franchise, LLC v. Tarntino*, 826 F.3d 653, 658 (2d Cir. 2016)

(quoting *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009)).  Spin Master's first

counterclaim, seeking such cancellation for fraud, must "satisfy the pleading requirements of Rule 9(b)."  *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 241 F. Supp. 3d 461, 480 (S.D.N.Y. 2017) (citations omitted); *Ferring B.V. v. Fera Pharms., LLC*, No. 13-CV-4640, 2015 WL 1359073, at *6 (E.D.N.Y. Mar. 24, 2015).  To satisfy Rule 9(b), a claim must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993)).

Spin Master's fraud counterclaim satisfies these elements.  It alleges that George & Co.'s president, Peter Smilanich, submitted two declarations to the PTO in which he averred that no one else was using the '343 or '344 marks.  (Countercls. ¶¶ 15–17).  And according to Spin Master, these statements were fraudulent because George & Co. knew of Imagination's similar marks at the time and had initiated litigation concerning those two marks.  (*Id.* ¶ 17).  Separately, Spin Master alleges that during the prosecution of the LEFT CENTER RIGHT marks, George & Co.'s trademark counsel omitted to disclose specific facts to the PTO, including, among others, that Imagination and Spin Master had been using the same marks on a "virtually identical game" since 2007.  (*Id.* ¶ 18).  And it alleges that this non-disclosure was intentional and done with an intent to defraud the PTO.  *Id.*

George & Co.'s arguments for why these allegations do not satisfy Rule 9(b) are simply without merit.  In conclusory fashion, it asserts that the counterclaim does not identify the allegedly fraudulent statements, when they were made, or why they were fraudulent.  (Mem. at 12).  But the counterclaim quite clearly does, going so far as to

append the declarations alleged to be fraudulent (which are dated), and then specifying the particular facts that trademark counsel failed to disclose during the prosecution process. (Countercls. ¶¶ 15–16, 18). And as for its cavil that the counterclaim fails to allege why these statements were fraudulent, George & Co. is wrong again. Spin Master alleges why the declarations were fraudulent. (*Id.* ¶ 18 ("The declarations were misleading in that they suggested that no one else was using a similar mark when George had unsuccessfully sued Imagination by claiming that Imagination was using a similar mark.")). And it does the same for the omissions to the PTO by alleging that the omissions were fraudulent because they deceived the PTO into concluding that these marks were not being used by others in identical ways. (*Id.*). This satisfies Rule 9(b). *See, e.g., Ferring*, 2015 WL 127875, at *16–17 (finding Rule 9(b) satisfied where counterclaim alleged "Plaintiff knowingly misrepresented information to the USPTO with the intent to deceive the . . . [USPTO] into believing that the mark was being used on a larger number of pharmaceuticals than actually occurred." (quotations omitted)); *Ameasia Co. v. Golden Vill. Trading, Inc.*, No. 08-CV-2495, 2009 WL 10706737, at *3 (E.D.N.Y. July 27, 2009) (holding defendants satisfied Rule 9(b) "with respect to their allegations of fraud on the PTO" by alleging plaintiffs falsely "stated, on oath, that it had used the Harvest mark since April 1, 2002 in connection with numerous dehydrated spice products, and since January 1, 2003 in connection with numerous fresh agricultural products" (footnotes omitted)).

George & Co.'s remaining arguments, including that Spin Master's evidence is unfounded and speculative, (Mem. at 13–14), or that it fails to account for subsequent events in related litigation between the parties, cannot be credited on a motion to dismiss, since they rely on facts outside the pleadings. *E.g., Finjan, Inc. v. Check Point*

*Software Techs., Inc.*, No. 18-CV-2621, 2019 WL 330912, at *5–6 (N.D. Cal. Jan. 25, 2019) (rejecting arguments seeking to dismiss inequitable conduct claim on grounds that disclosed information to PTO was not in fact fraudulent).

B.    Whether the LCR Marks are Generic

"Generic terms are not entitled to any common-law trademark protection, nor may they be registered under the Lanham Act." *815 Tonawanda St. Corp. v. Fay's Drug Co.*, 842 F.2d 643, 647 (2d Cir. 1988). George & Co. makes a series of arguments why the 13 LCR Marks, challenged in the second counterclaim, are not generic. Among other things, George & Co. argues that these marks have "commercial distinctiveness," (Mem. at 16), and takes issue with the type of evidence Spin Master relies on in the counterclaim. (*Id.* at 17–19). These arguments seek to have the Court decide, as a matter of law, that these 13 marks are entitled to trademark protection.

Such arguments are inappropriate on a motion to dismiss. "Whether a trademark is generic or descriptive is a matter of fact that is not properly determined by examining the pleadings alone." *Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, No. 18 CIV. 244, 2019 WL 4640219, at *3 (S.D.N.Y. Sept. 24, 2019) (collecting cases). That is because classification of a mark as generic is typically an issue of fact. *Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 215 (2d Cir. 2003).

For example, George & Co.'s argument that the LCR marks have "commercial distinctiveness," (Mem. at 16), is not something that can be resolved at the pleading stage. The counterclaim alleges that the term "LCR" has become generic because people use it as a shorthand for Spin Master's game, and not George & Co.'s game—as evidenced by publicly available videos, (Countercls. ¶ 25), and on publicly available websites, (*id.* ¶¶ 26–27). Spin Master alleges that nearly 47,000 people have viewed the

YouTube video in which "the consumer is clearly playing Spin Master's game and refers to the game as 'Left Center Right.' But the consumer titled the video 'How We Play LCR (Left Center Right).'" (*Id.* ¶ 25). One website provides instructions for "how to play the 'LCR Dice Game'" using dice that are from neither party's game and explains "that the 'LCR' game is also known as the 'Left Center Right' game." (*Id.* ¶ 26). The other likewise "provides instructions on 'How to Play LCR' and variations of the game with generic six-sided dice (not George's game or Spin Master's game)" and refers to neither company's game. (*Id.* ¶ 27). George & Co. takes issue with this evidence, calling it "dubious" and "threadbare," among other things. (Reply at 10). Such arguments about the weight of evidence are not appropriate to resolve on a motion to dismiss. *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) ("The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." (internal citation and quotation omitted)); *see, e.g.*, *FragranceNet.com, Inc. v. Les Parfums, Inc.*, 672 F. Supp. 2d 328, 333 (E.D.N.Y. 2009) ("[T]he Court concludes that the question of whether FragranceNet's registered trademarks are generic is a fact-specific inquiry that is inappropriate for determination on a motion to dismiss."); *Courtenay Commc'ns*, 334 F.3d at 215 ("The pleadings and documents necessarily relied upon by plaintiff's complaint, . . . are insufficient for determining the critical fact of how the public views the 'iMarketing News' mark." (internal citation omitted)).

And while George & Co. contends that Spin Master has not met its burden to overcome the presumption that its marks are not generic, that misapprehends the posture of its motion. At this stage, it is George & Co. that must "prove the absence of all

material facts." *Now-Casting Econ.,* 2019 WL 4640219, at *4.  Given the allegations in

the counterclaims, it cannot do so.[36]

CONCLUSION

For the reasons stated above, it is respectfully recommended that George & Co.'s

motion to dismiss Spin Master's counterclaims be denied.

Any objections to the Report and Recommendation above must be filed with the

Clerk of Court within 14 days of receipt of this report.  Failure to file objections within

the specified time waives the right to appeal any judgment or order entered by the

District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d

Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a

---

[36] George & Co. cites no applicable case law to the posture or substance of its
motion.  *FC Online Mktg., Inc. v. Burke's Martial Arts, LLC* addressed a trade dress
claim and allegation of genericness on a motion for summary judgment, not on a motion
to dismiss.  No. 14-CV-3685, 2015 WL 4162757, at *31 (E.D.N.Y. July 8, 2015)
(analyzing only *infringement* claim on 12(b)(6) motion).  In *Now-Casting Econ.*, the
Court *denied* the motion on the pleadings where the plaintiff made a declaration that
the defendant's marks were generic—meaning the issue could not be decided without
factual inquiry and discovery.  2019 WL 4640219, at *4 ("Accordingly, after a thorough
review of the pleadings, the Court holds that Now-Casting has not alleged a non-
disputed sufficient factual basis for inferring who the relevant public is, and
subsequently whether the terms at issue are generic.").  And in its Reply, George & Co.
cites *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 744 (2d Cir. 1998)
for its new argument that the counterclaims fail to allege that the marks were generic "at
the time [they] entered the market."  (Reply at 10).  The case stands for no such
proposition.  In *Nora*, the court merely decided that in a trade dress dispute, it would
measure distinctiveness when the defendant introduced its infringing product, as
opposed when *plaintiff* introduced its product.  164 F.3d at 744.  Indeed, the court
recognized—as Spin Master argues here—that "competitors are free to use an owner's
trade dress if it has become *generic over time*."  *Id.* (emphasis added).  No case stands
for the proposition that a mark can only be challenged as generic at the time it was
registered or came into existence.  Such a principle would turn trademark law—
premised on the idea that marks can become generic over time—on its head.  *Lucky
Brand*, 140 S. Ct. at 1596.

waiver of any further judicial review of the magistrate [judge's] decision." (quotations omitted)).

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York
November 23, 2021